**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UPSTAIRS SOLUTIONS, LTC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 10 C 4965** |
| | ) | |
| **CHARLES B. ENGLISH,** | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM ORDER

This unfair competition claim has devolved into a dispute about attorneys' fees. Plaintiff Upstairs Solutions, LTC employed Defendant Charles B. English until English went to work for a competitor. Plaintiff attempted to negotiate an agreement to bar English from selling products similar to Plaintiff's, but the effort failed, as did Plaintiff's motion for a preliminary injunction. Plaintiff now moves to dismiss the case without prejudice pursuant to Rule 41(a)(2), and asks the court to award fees in its favor as a sanction for Defendant's litigation misconduct. Defendant contends any dismissal must be with prejudice or must be accompanied by an award of attorneys' fees in Defendant's favor. As explained below, the court declines to award fees in favor of either side, but will condition any re-filing of this case on reimbursement of the expense incurred to defend the preliminary injunction hearing.

## PROCEDURAL BACKGROUND

Plaintiff Upstairs Solutions, LTC and Silverchair Learning Systems ("Silverchair"), are competitors in providing online education for long-term care facility staff. Defendant Charles English was employed to sell such educational services for Plaintiff until July 22, 2010, when he went to work for Silverchair. Before hiring English, Silverchair took steps to determine whether English was bound by a noncompetition agreement, and English himself communicated with Plaintiff's COO, Ken Berger, in at least some detail concerning his plans.

In a letter resigning from his position, English assured Berger that in his new position with

Silverchair, he would not be selling a product that directly competes with the training product that Plaintiff sells. But when Plaintiff's forensics expert examined the company laptop that English returned to Plaintiff, the expert concluded that English had accessed a number of Plaintiff's confidential documents in rapid succession, while an external drive was connected to the laptop, and had almost certainly copied Plaintiff's customer list. Believing that English had a copy of Plaintiff's information security policy and that the documents he had copied were available only with a company password, Plaintiff filed suit in this court on August 6, 2010.

The parties then engaged in efforts to negotiate a settlement. Early on, defense counsel had assured Plaintiff that English's work for Silverchair involved "marketing a web-based portal to *families* of seniors," not a training program for long-term care facility *staff* members. Thus reassured, Plaintiff chose not to seek a preliminary injunction, instead drafting a settlement agreement that would provide for reimbursement of modest attorneys' fees and a written assurance that English would destroy or return documents containing Plaintiff's confidential information. In a settlement conference before Magistrate Judge Kim of this court, English again confirmed that he was not selling a product in competition with Plaintiff; that he had not shared customer information or pricing information with Silverchair; and that he had no plans to compete with Plaintiff in the immediate future. Then on January 27, 2011, English withdrew from the deal, refusing to sign the agreement. Plaintiff later learned that, contrary to the language in the agreement he had negotiated through his attorney, English had in fact disclosed Plaintiff's pricing information and customer lists to his new employer, and that in his new position he was in fact competing with Plaintiff.

At this point, Plaintiff filed a motion for preliminary injunction. The court heard evidence in February and March 2011. At the conclusion of the hearing, on March 17, 2011, the court denied the motion. In an oral ruling, the court noted that although English had, by then, been employed by Silverchair for more than half a year, Plaintiff presented no concrete evidence of lost sales, nor

any other evidence of direct competitive harm. Moreover, Plaintiff did not satisfy the court that it had taken all necessary and appropriate steps to protect the purportedly confidential information at issue. Thus, although English had received what the court referred to as a "generic notice" of the confidential nature of Plaintiff's customer lists and pricing information, he did notsign a confidentiality agreement or a noncompetition agreement. At least half of Plaintiff's employees did not even receive the "information security policy" Plaintiff relies on until the date of the preliminary injunction hearing. And, although the communication he had with Mr. Berger may have been incomplete or imperfect, it appears that English had made efforts to confirm that he was free to take certain material with him when he resigned. Finally, the court noted that customer lists and client "relationships" are not ordinarily protectable and, although pricing plans may be held in confidence, prices are not highly confidential; they are revealed to customers.

Defendant pressed the court to go beyond denial of the preliminary injunction and enter judgment in English's favor as a matter of law. The court declined to do so and again encouraged the parties to attempt to reach a settlement. Those efforts have not been successful. The court's ruling on the preliminary injunction motion has effectively ended the lawsuit, however, and Plaintiff has now moved for voluntary dismissal pursuant to Rule 41(a)(2).

## **DISCUSSION**

Rule 41(a)(2) provides in relevant part that where the plaintiff seeks voluntary dismissal without prejudice after the defendant has filed an answer or motion for summary judgment, the case may be dismissed "only by court order, on terms that the court considers proper." The Rule contemplates that a plaintiff is free to dismiss an action without prejudice so long as no other party is harmed. Defendant English insists he has been harmed by this litigation. He argues that the court should dismiss the case with prejudice, paving the way for his own fee petition, or should, as a condition of dismissing the case without prejudice, order Plaintiff to reimburse English for the attorneys' fees incurred in his defense.

3

Not surprisingly, Plaintiff sees the case quite differently. In considering whether any conditions should be imposed on its Rule 41(a)(2) dismissal, the court is expected to assess the effort and expense to which the Defendant has gone in preparing for trial; any excessive delay or lack of diligence on Plaintiff's part; the sufficiency of Plaintiff's explanation for dismissing the case; and the fact that Defendant has gone to the effort of preparing a summary judgment motion. *Ratkovich ex rel. Ratkovich v. Smith Kline*, 951 F.2d 155, 158 (7th Cir.1991). Plaintiff here urges that these factors militate in favor of dismissal without any cost or fee-shifting. Plaintiff contends it was diligent in pursuing the lawsuit and wishes to dismiss it now only because the court's ruling on the preliminary injunction ruling renders further relief unlikely. English himself did not pay any legal fees to defend himself in this action, Plaintiff points out; Silverchair provided him with legal representation. And, although English's lawyers have filed a motion for summary judgment, they did not brief or argue that motion.

In fact, in Plaintiff's estimation, it is English himself who should be paying fees. The court has authority to do so, Plaintiff observes, under Rule 37 and under its inherent power to "sanction conduct that abuses the judicial process." *Montano v. City of Chicago,* 535 F.3d 558, 563 (7th Cir. 2008). Such abuse is involved here, Plaintiff contends, recounting these circumstances:

- English falsely testified that he was selling only Silverchair's "family" product ("SLS for Families"), not the "staff" training product ("SLS for Staff") that competes directly with Plaintiff's business. In fact, Plaintiff asserts, English was indeed selling the "SLS for Staff" product either by introducing Silverchair's sales representatives to Plaintiff's clients or by using vendors as "middlemen."

- English testified that he had not shared any information about Plaintiff with Silverchair, and made similar representations through his attorney in settlement negotiations, but later admitted that he had provided a list of Plaintiff's customers and prospects to his new employer, and had shared pricing information concerning Plaintiff's clients with Silverchair.

- English testified that his new job did not require him to solicit business for "SLS for Staff;" but his compensation plan explicitly required him to do so. Similarly, though English testified that he would not receive additional compensation for converting a client from a customer of Plaintiff to a

4

customer of Silverchair, his compensation plan explicitly provided for such additional compensation.

(Pl.'s Mot. for Voluntary Dismissal [60], at 9-11.)  English insists Plaintiff has mischaracterized or misunderstood his testimony, and that none of his conduct was improper.  He emphasizes the evidence that Plaintiff did little to protect its purportedly confidential information, and engaged in costly litigation without any evidence that it had been harmed.  Should the court dismiss the case without prejudice and decline to award fees, English argues, the door will be open for Plaintiff to sue English again.

As the court sees things, such a result is largely hypothetical.  Any competitive harm to Plaintiff that the court would be capable of remedying has likely happened already.  And before filing a second lawsuit, Plaintiff would undoubtedly consider carefully the amounts it has spent on this case already.

In the court's judgment, neither side has covered itself in glory in this litigation, and for now, neither is entitled to an award of fees.  Plaintiff pursued the case without careful consideration of its merits and without any evidence of quantifiable economic harm, even months after English had departed Plaintiff's employment.  English, for his part, knew or should have known that his testimony and communications were misleading.  His apparent change of tune in the negotiations with Judge Kim is particularly disappointing.  Whether intentionally or carelessly, he appears to have led Plaintiff to believe he was prepared to make representations that could resolve the lawsuit, only to suddenly withdraw those positions.

The court concludes that this case should be dismissed without prejudice, with each side to bear its own costs and fees.  As explained earlier, the court thinks it unlikely that Plaintiff would attempt to renew this litigation.  Should Plaintiff do so, however, the court directs, as a condition of any new lawsuit against English arising out of the parties' past relationship, that Plaintiff will reimburse English for the fees incurred in the defense of the preliminary injunction hearing.

5

**<u>CONCLUSION</u>**

Plaintiff's motion for voluntary dismissal [60] is granted. This case is dismissed without prejudice, with each party to bear its own costs and fees. Any refiling of this action will be conditioned on reimbursement of fees incurred in defense of the preliminary injunction motion only. Defendant's motion for summary judgment [55] is stricken as moot. This case is terminated.

ENTER:

Dated: March 28, 2012

_____
REBECCA R. PALLMEYER
United States District Judge